Rosanne Mah (State Bar No. 242628)
Email: rmah@zlk.com
**LEVI & KORSINSKY, LLP**
388 Market Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

BENNETT ANSCHUTZ, an individual,

Plaintiff,

vs.

PACIFIC PREMIER BANCORP, INC.,
STEVEN R. GARDNER, JEFF C.
JONES, JOHN J. CARONA SR., AYAD
A. FARGO, JOSEPH L. GARRETT,
JAYNIE MILLER STUDENMUND, M.
CHRISTIAN MITCHELL, MICHAEL J.
MORRIS, BARBARA S. POLSKY,
ZAREH H. SARRAFIAN, and CORA M.
TELLEZ,

Defendants.

Case No. _____

**COMPLAINT FOR VIOLATION OF
THE SECURITIES EXCHANGE ACT
OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff Bennett Anschutz ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### NATURE OF THE ACTION

1.       Plaintiff brings this action against Pacific Premier Bancorp, Inc. ("Pacific Premier" or the "Company") and Pacific's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a).  Specifically, Defendants solicit stockholder approval in connection with the proposed merger of the Company with Opus Bank ("Opus"), through a Registration statement filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading.  Stockholders need this material information to decide how to vote their shares.

2.       On January 31, 2020, Pacific Premier announced that it had entered into a definitive agreement (the "Merger Agreement"), pursuant to which Opus will combine with Pacific in an all stock deal valued at approximately $1.0 billion, or $26.82 per share, based on a closing price for Pacific Premier's common stock of $29.80 as of January 31, 2020 (the "Proposed Transaction"). Under the terms of the agreement, Opus stockholders will have the right to receive will have the right to receive 0.90 shares of Pacific Premier common stock for each share of Opus common stock they own (the "Merger Consideration").

3.       In connection with the Proposed Transaction, on March 16, 2020, the Company filed a Registration Statement on Form S-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement is materially deficient and misleading because, *inter alia*, it omits material information concerning the background of the transaction, the company's financial projections, and the analyses performed by the Company's financial advisor in connection with the

Proposed Transaction, D.A. Davidson & Co. ("D.A. Davidson"). The omission of such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to cast a properly informed vote on the Proposed Transaction.

4.     For these reasons and as set forth in detail herein, Defendants have violated Sections 14(a) and 20(a) of the Exchange Act.   Judicial intervention is warranted here to prevent irreparable harm to the Company's stockholders. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Pacific Premier maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in

this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

8.      Plaintiff, at all relevant times, is the owner of shares of Pacific Premier common stock.

9.      Defendant Pacific Premier provides banking services to businesses, professionals, real estate investors, non-profit organizations and consumers in its primary market area of Southern California currently through 40 locations in the counties of Orange, Los Angeles, Riverside, San Bernardino, San Diego, San Luis Obispo and Santa Barbara, California, as well as markets in Pima and Maricopa Counties, Arizona, Clark County, Nevada, and Clark County, Washington. Through Pacific Premier's Bank branches and its Internet website at www.ppbi.com, Pacific Premier offers a broad array of deposit products and services for both businesses and consumer clients, including checking, money market and savings accounts, cash management services, electronic banking services, and online bill payment. Pacific Bank also offers a wide array of loan products, such as commercial business loans, lines of credit, U.S. Small Business Administration loans, commercial real estate loans, residential home loans, construction loans and consumer loans. Pacific Premier also offers specialty banking products for homeowners associations and franchise lending nationwide. As of December 31, 2019, Pacific had, on a consolidated basis, total assets of $11.8 billion, total stockholders' equity of $2.0 billion and total deposits of $8.9 billion. At December 31, 2019, Pacific had gross loans held for investment of $8.7 billion, with real estate loans and business loans collateralized by real estate totaling 75% of its gross loan portfolio. Pacific Premier's principal executive offices are located at 17901 Von Karman Ave., Suite 1200, Irvine, California 92614.  Pacific Premier's common stock is traded on the NASDAQ under the symbol "PPBI."

10.      Defendant Steven R. Gardner ("Gardner") has served as director since 2000.

11.     Defendant Jeff C. Jones ("Jones") has served as director since 2006.

12.     Defendant John J. Carona Sr., ("Carona Sr.") has served as a director since 2013.

13.     Defendant Ayad A. Fargo ("Fargo") has been a member of the Board since 2016.

14.     Defendant Joseph L. Garrett ("Garrett") has been a member of the Board since 2012.

15.     Defendant Jaynie Miller Studenmund ("Studenmund") has been a member of the Board since 2019.

16.     Defendant M. Christian Mitchell ("Mitchell") has been a member of the Board since 2018.

17.     Defendant Michael J. Morris ("Morris") has been a member of the Board since 2017.

18.     Defendant Barbara S. Polsky ("Polsky") has been a member of the Board since 2019.

19.     Defendant Zareh H. Sarrafian ("Sarrafian") has been a member of the Board since 2016.

20.     Defendant Cora M. Tellez ("Tellez") has been a member of the Board since 2015.

21.     Defendants Tellez, Sarrafian, Polsky, Morris, Mitchell, Studenmund, Garrett, Fargo, Carona Sr., Jones, and Gardner are collectively referred to herein as the "Board" or the "Individual Defendants."

## FURTHER SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

22.     On January 7, 2019, Steven Gardner, Chairman and Chief Executive Officer of Pacific Premier, met with Paul Greig, Chairman of the Board and then Interim Chief Executive Officer of Opus. During this meeting, Mr. Gardner informally expressed Pacific Premier's interest in potentially acquiring Opus at some

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

time in the future. No terms of a potential business combination were proposed.

23.     On June 11, 2019, Pacific Premier submitted a non-binding indication of interest to acquire Opus in a stock-for-stock merger transaction at a fixed exchange ratio of 0.8500 shares of Pacific Premier common stock for each share of Opus common stock. The proposal also indicated that two of Opus's existing directors would be added to the Pacific Premier and Pacific Premier Bank boards, such that former Opus directors would represent two of 13 directors at Pacific Premier.

24.     One month later, on July 23, 2019, Mr. Gardner wrote to the Opus board to reiterate Pacific Premier's interest in acquiring Opus on the terms included in Pacific Premier's June 11, 2019 non-binding indication of interest.

25.     On October 2, 2019, Opus and Pacific Premier executed a mutual nondisclosure agreement, and, thereafter, limited non-public information regarding Opus and Pacific Premier was made available to each institution by the other for purposes of due diligence.

26.     Following continued discussions between the two entities and their representatives, on December 6, 2019, Pacific Premier submitted a revised non-binding indication of interest to acquire Opus in a stock-for-stock merger transaction, which reflected an increase in the fixed exchange ratio to 0.9000 shares of Pacific Premier common stock for each share of Opus common stock. The proposal retained from the June 11, 2019 proposal the proposal to add two Opus directors to the Pacific Premier and Pacific Premier Bank boards.

27.     Later that same month, following further discussion between the two entities and their representatives, on December 29, 2020, Pacific Premier submitted a further revised non-binding indication of interest to acquire Opus in a stock-for-stock merger transaction. The proposal retained the fixed exchange ratio of 0.9000 shares of Pacific Premier common stock for each share of Opus common stock, as reflected in the December 6, 2019 proposal. The proposal, however, contemplated that in adding two Opus board members to the Pacific Premier and Pacific Premier Bank boards, two

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

existing members of the Pacific Premier and Pacific Premier Bank boards would resign, resulting in Opus board members representing two of 11, rather than two of 13, directors on the Pacific Premier and Pacific Premier Bank boards.

28.     On January 31, 2020, the Pacific Premier board also held a special telephonic meeting for the purposes of considering the merger agreement. At that meeting, the Pacific Premier board thoroughly discussed and considered the terms and conditions of the merger and the merger agreement. Representatives of H&K advised the Pacific Premier board on its duties in connection with the transaction and the terms of the merger agreement. D.A. Davidson reviewed the financial aspects of the proposed transaction and rendered an opinion to the Pacific Premier board of directors to the effect that, as of such date and subject to the procedures followed, assumptions made, matters considered, and qualifications and limitations on the review undertaken by D.A. Davidson as set forth in such opinion, the merger consideration to be paid to the Opus shareholders was fair, from a financial point of view, to Pacific Premier. After deliberation, the Pacific Premier board voted unanimously to approve the merger agreement and the transactions contemplated by the merger agreement, and authorized Pacific Premier management to execute the merger agreement.

29.     Later that same day, the merger agreement was executed and delivered by Opus, and Pacific Premier. The parties announced the transaction the morning of February 3, 2020, before the opening of the financial markets in New York.

30.     In a press release dated February 3, 2020, Pacific Premier announced that it had entered into a Merger Agreement with Opus.

31.     The press release states in pertinent part:

IRVINE, Calif.--(BUSINESS WIRE)--Pacific Premier Bancorp, Inc. (NASDAQ: PPBI) (the "Company", "Pacific Premier", "we", "us" or "our"), the holding company of Pacific Premier Bank, and Opus Bank (NASDAQ: OPB) ("Opus") today announced they have entered into a definitive agreement under which Pacific Premier will acquire Opus in an all-stock transaction valued at approximately $1.0 billion, or $26.82 per share, based on a closing price for Pacific Premier's common stock of $29.80 as of January 31, 2020. Pacific Premier expects the transaction to

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

be 14% accretive to EPS in 2021 with a 1.8 year earnback period to tangible book value per share based on anticipated cost savings of approximately 25%.

"We look forward to the opportunities and benefits this combination will bring to our shareholders, in terms of prospects for future earnings growth, immediate dividend pick-up and diversification, as well as to clients, employees and the many communities we serve."

Opus is headquartered in Irvine, California with $8.0 billion in total assets, $5.9 billion in gross loans and $6.5 billion in total deposits as of December 31, 2019. Opus operates 46 banking offices located throughout California, Washington, Oregon and Arizona. The transaction will increase Pacific Premier's total assets to approximately $20 billion on a pro forma basis as of December 31, 2019.

Steven R. Gardner, Chairman, President and Chief Executive Officer of Pacific Premier, commented, "We are excited to announce this transformative merger that we believe will create one of the premier commercial banks in the Western United States. The combination with Opus provides us with a meaningful presence in attractive major metropolitan markets with operational scale, a complementary set of banking products and services, and improved revenue and business diversification. As a result of this transaction, we believe we will be well-positioned to generate profitable growth in the future and to benefit the combined institution's shareholders."

"We are pleased to be partnering with Pacific Premier and believe the combination creates one of the most attractive banks in the Western U.S.," said Paul Taylor, President and Chief Executive Officer of Opus. "We look forward to the opportunities and benefits this combination will bring to our shareholders, in terms of prospects for future earnings growth, immediate dividend pick-up and diversification, as well as to clients, employees and the many communities we serve."

Anticipated Benefits of the Transaction

- Financially attractive with double-digit EPS accretion in 2021 and tangible book value earnback period of 1.8 years

- Increased scale provides improved opportunities to enhance efficiencies and leverage investment in technology

- Greater revenue diversification with the addition of Opus' strong fee income generating businesses

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

- Adds a large source of stable, low-cost deposits through escrow and trust business lines, collectively providing $2.0 billion in deposits with a blended cost of deposits of 0.10%

- Accelerated capital generation facilitating continued prudent capital management and creating additional opportunities to return capital to shareholders

Transaction Details

Under the terms of the definitive agreement, which was approved by the Board of Directors of both companies, holders of Opus common stock (including holders of Opus Series A preferred stock whose shares will be treated on an as-converted basis) will have the right to receive 0.90 shares of Pacific Premier common stock for each share of Opus common stock they own.

Existing Pacific Premier shareholders will own approximately 63% of the outstanding shares of the combined company, and Opus shareholders are expected to own approximately 37%.

The transaction is expected to close in the second quarter of 2020, subject to satisfaction of customary closing conditions, including regulatory approvals and shareholder approval from Pacific Premier and Opus shareholders. Opus directors who own shares of Opus common stock, executive officers and certain shareholders have entered into agreements with Pacific Premier pursuant to which they have committed to vote their shares of Opus common stock in favor of the acquisition. For additional information about the proposed acquisition of Opus, shareholders are encouraged to carefully read the definitive agreement, which will be filed with the Securities and Exchange Commission ("SEC").

**The Materially Misleading Registration Statement Prevents Stockholders from Making an Informed Decision**

32.     On March 16, 2020, the Company filed the Registration Statement with the SEC.   As alleged herein, the Registration Statement contained material misrepresentations and omissions of fact that render portions of the Registration Statement misleading.

33.     Designed to convince stockholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered materially misleading by the omission of information relating to the financial advisor's fairness opinion. This

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Pacific Premier stockholders.

### Material Omissions Concerning Management's Financial Projections and the Financial Advisor's Respective Financial Analyses

34.     The Registration Statement describes the financial advisor's fairness opinion and the various valuation analyses the financial advisor performed in support of its opinion. However, the description of the financial advisor's fairness opinion and the underlying analyses omits key inputs and assumptions. Without this information, as described below, Pacific's public stockholders are being misled as to what weight, if any, to place on the financial advisor's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Pacific Premier's stockholders, and its absence renders the description of Goldman Sachs' fairness opinion misleading.

35.     With respect to the Company's Projections, the Registration Statement fails to provide material information concerning any of the financial projections either prepared by or approved by Pacific Premier management, or utilized by D.A. Davidson. Specifically, the Registration Statement notes that D.A. Davidson utilized projections consisting of the publicly available average consensus "street estimates" as discussed with and confirmed by Pacific Premier management, however, these estimates are not disclosed in the Registration Statement.

36.     These projections are vital to Pacific's stockholders. In connection with rendering its opinion, D.A. Davidson reviewed, among other things, the net present value of Pacific Premier and Opus with consideration of projected financial results. Registration Statement at 73. However, the actual projections utilized in the net present value of Pacific Premier and Opus are not the only vital inputs and

assumptions missing from D.A. Davidson's fairness opinion. With regard to the *Net Present Value Analysis for Opus*, the Registration Statement fails to disclose (i) the terminal value of Opus common stock at December 31, 2025; and (ii) the inputs and assumptions underlying the application of price to earnings multiples of 10.0x to 24.0x. Similarly, with regard to the *Net Present Value Analysis for Pacific Premier*, the Registration Statement omits to disclose (i) the terminal value of Pacific Premier common stock at December 31, 2025; and (ii) the inputs and assumptions underlying the application of price to earnings multiples of 10.0x to 24.0x.

37.     Furthermore, with respect to D.A. Davidson's *Pacific Premier Comparable Companies Analysis*, fails to disclose the individual multiples for each of the target companies analyzed by D.A. Davidson's.

38.     Similarly, with respect to D.A. Davidson's *Precedent Transactions Analysis*, fails to disclose the individual multiples for each of the target transactions analyzed by D.A. Davidson.

39.     Without such undisclosed information, Pacific Premier stockholders cannot evaluate for themselves whether the financial analyses performed by the financial advisor was based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which financial advisor's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

40.     The omission of this information renders the statements in the "Opinion of Pacific Premier's Financial Advisor" of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

41.     As a result of the above-referenced misleading statements and omissions in the Registration Statement, Defendants violated Sections 14(a) and 20(a) of the Exchange Act.

*Material Omissions Concerning Potential Conflicts of Interest*

42.     Finally, the Registration Statement fails to disclose material information related to potential conflicts of interest faced by the Company's financial advisor.

43.     Specifically, in describing financial advisory or other services to Pacific Premier for which it received compensation, the Registration Statement notes that that in the two years preceding the date of the fairness opinion letter, D.A. Davidson had provided investment-banking services to Pacific Premier for which it had received customary compensation and reimbursement of out-of-pocket expenses for such services.

44.     However, with regard to the past work that D.A. Davidson has performed over the past two years, the Registration Statement fails to disclose the fees that D.A. Davidson has received for this work, nor the precise nature of the work that it has performed. Without this information, there is a concern that the prior relationship between D.A. Davidson and the Company may have enabled these the Company to push D.A. Davidson to support a sale of the Company and influence the financial analyses provided to the Board.

45.     Accordingly, without full disclosure of the exact nature of the work done by D.A. Davidson for the Company in the last two years, and the fees received for such work, Pacific Premier stockholders may be materially mislead as to D.A. Davidson's potential conflicts of interest.

46.     Based on the foregoing disclosure deficiencies in the Registration Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Pacific Premier stockholders will suffer, absent judicial intervention, if Pacific Premier's stockholders are required to decide how to vote their shares without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

## COUNT I

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Proxy Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50.    The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

51.    Here, Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the Company's financial projections; and (ii) the valuation analyses of the financial advisor.

52.    In so doing, Defendants made untrue statements of fact and/or omitted

material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to Pacific common stockholders although they could have done so without extraordinary effort.

53. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement notes that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the financial advisors, as well as their respective fairness opinions and the assumptions made and matters considered in connection therewith.

54. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company, and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the financial advisors' analyses in connection with their receipt of the fairness opinion, question the advisors as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement, and review it carefully before it was

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

disseminated, to corroborate that there are no material misstatements or omissions.

55.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

56.    Pacific Premier is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

57.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and Pacific Premier stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

58.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.    The Individual Defendants acted as controlling persons of Pacific Premier within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Pacific Premier and

participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  Thus, the Individual Defendants were directly involved in the creation of the Registration Statement.

62.     The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over, and did control, a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a)

of the 1934 Act.  As a direct and proximate result of the Individual Defendants'
conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and
severally, as follows:

a)  declaring that the Registration Statement is materially misleading and
contains omissions of material fact in violation of Section 14(a) of the
Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel,
agents, employees and all persons acting under, in concert with, or for
them, from proceeding with, consummating, or closing the Proposed
Transaction, unless and until Defendants disclose the material information
identified above which has been omitted from the Registration Statement;

c)  to the extent the Proposed Transaction is consummated prior to the
Court's entry of a final judgment, awarding Plaintiff rescissory damages
against the Individual Defendants, including, but not limited to, pre-
judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable
allowance for the fees and expenses of Plaintiff's attorneys and experts;
and

e)  granting Plaintiff such further relief as the Court deems just and proper.

///
///
///
///
///
///
///

1

## JURY DEMAND

2        Plaintiff demands a trial by jury.

3   Dated: April 2, 2020                     **LEVI & KORSINSKY, LLP**

4                                            By: /s/ *Rosanne L. Mah*

5                                            Rosanne L. Mah
                                             388 Market Street, Suite 1300
6                                            San Francisco, California 94111
                                             Telephone: (415) 373-1671
7                                            Facsimile: (415) 484-1294

8                                            *Counsel for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28